# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **LISA CRAFT**, individually **and** as Administratrix of the Estate of **BILLY SLAGLE**, 7015 Westlake Ave. Parma, OH 44129 | CASE NO. JUDGE |
| And | |
| **CASEY LOPEZ** 2129 West 83rd Street Cleveland, OH, 44102 | |
| And | |
| **PATRICIA WAKEFIELD** 133 West 78th Street Cleveland, OH, 44102 | **PLAINTIFFS' COMPLAINT** **(Jury Demand Endorsed)** |
| Plaintiffs | |
| v. | |
| **OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS** 770 West Broad Street Columbus, Ohio 43222 | |

        And

**CHILLICOTHE CORRECTIONAL INSTITUTION**
P. O. Box 5500
15802 State Route 104 North
Chillicothe, OH 45601

        And

**NORMAN ROBINSON**
both individually and in his official capacity
770 West Broad Street
Columbus, Ohio 43222

        And

**CLAY PUTNAM**
both individually and in his official capacity
3087 County Road 550
Frankfort, OH 45628-9506

        And

**JOHN McCOLLISTER**
both individually and in his official capacity
312 Biers Run Road
Chillicothe, OH 45601-8223

        And

**J. ROSS HAFFEY**
7301 Wilson Mills Road
Gates Mills, OH, 44040

        And

**BERNARD & HAFFEY, Co. L.P.A**
5001 Mayfield Road. Ste. 301
Cleveland, OH 44124-2610

        And

**ESTATE OF GRANVILLE BRADLEY**
c/o FORBES FIELDS & ASSOC.
614 W. Superior Avenue St. 700
Cleveland, OH 44113-1368

And

**FORBES FIELDS & ASSOC.**
614 W. Superior Avenue St. 700
Cleveland, OH 44113-1368

Defendants

## I. PRELIMINARY STATEMENT

1. This case challenges institutional Defendants' failure to provide adequate supervision of and care for Billy Slagle, deceased, while in custody at the Chillicothe Correctional Institution. On or about August 4, 2013 Defendants knew that Billy Slagle was scheduled to be executed on August 7, 2013 and was at risk to commit suicide, yet took no steps to protect him from the known dangers of suicide and Defendants falsified electronic records indicating that such precautions had in fact been observed. Plaintiff's sister, administratrix and next of kin, bring this case to secure compensation and other relief and in the hope that this case will help prevent other suicides in Chillicothe Correctional Institution and throughout the Ohio Department of Rehabilitation and Corrections' facilities in the State of Ohio.

2. This case also alleges willful and wanton misconduct as well as legal malpractice on the part of Billy Slagle's appointed defense attorneys in his criminal trial, leading to a guilty verdict of aggravated murder and a sentence of death in said trial. On or about February 29, 1988, Defendants knew that Billy Slagle's case was poor, that the death penalty was a highly probable result, and that Billy Slagle would be willing to accept a plea arrangement to avoid the death penalty. In spite of such a plea arrangement being offered prior to the criminal trial, the Defendants chose not to make Billy Slagle aware

of such an offer and denied it without counseling him or even alerting him to the existence of such an offer. On or about August 1, 2013, the circumstance of this plea offer was brought to Billy Slagle's attorneys' attention, and the fact that it was not discussed with Billy Slagle made it very likely that his execution would be stayed and parole granted. However, before Billy Slagle could be informed of this development, he took his own life in anticipation of his coming execution.

## II. JURISDICTION

3. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

## III. PARTIES

4. Plaintiff Lisa Craft is the duly appointed Administratrix of the Estate of Billy Slagle, deceased, having been appointed by the Probate Court of Cuyahoga County, Ohio on September 23, 2013, Ohio Case No. 2013-EST-192495.

5. Lisa Craft (Lisa) was at all times relevant to this Complaint the sibling of decedent Billy Slagle (Billy).

6. Casey Lopez (Casey) was at all times relevant to this Complaint the sibling of decedent Billy.

7. Patricia Wakefield (Patricia) was at all times relevant to this Complaint the mother of decedent Billy.

8. Lisa, Casey and Patrica are the sole heirs, beneficiaries, and immediate next-of-kin of decedent Billy.

9. Defendant Ohio Department of Rehabilitation and Corrections is a Governmental agency of the State of Ohio charged with and empowered to administer, oversee and create policies for operating the State's correctional facilities. The Ohio Department of

Rehabilitation and Corrections is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted on behalf of the State of Ohio and in the color of law.

10. Defendant Chillicothe Correctional Institution is a State owned and run medium-security correctional facility and detention center in Chillicothe, Ohio, and is the facility at which Billy Slagle was detained on the night of August 4, 2013. Chillicothe Correctional Institution is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted on behalf of the State of Ohio and in the color of law.

11. Defendant Norman Robinson is a resident of Franklin County, Ohio, and was at all times relevant the duly appointed Warden of Chillicothe Correctional Institution on the night of August 4, 2013. Norman Robinson is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted on behalf of the State of Ohio and in the color of law.

12. Defendant Clay Putnam resides at 3087 County Road 550, Frankfort, Ohio and was at all times relevant a corrections officer working as relief at Chillicothe Correctional Institution on the night of August 4, 2013. Clay Putnam is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted on behalf of the State of Ohio and in the color of law.

13. Defendant John McCollister resides at 312 Biers Run Road, Chillicothe, Ohio and was at all times relevant a corrections officer working as relief at Chillicothe Correctional Institution on the night of August 4, 2013. John McCollister is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted on behalf of the State of Ohio and in the color of law.

14. Defendant J. Ross Haffey resides at 7301 Wilson Mills Road, Gates Mills, Ohio, and was at all times relevant a trial attorney appointed for Billy Slagle's defense in his criminal trial in Cuyahoga County on or about February 29, 1988. J. Ross Haffey was

employed by Bernard & Haffey Co., L.P.A. At the time of the trial.

15. Defendant Bernard & Haffey Co., L.P.A., formerly Bernard, Haffey & Bosco Co., L.P.A., was at all times relevant a legal practice located at 5100 Mayfield Road, Ste. 301 in Cleveland Ohio. Bernard & Haffey Co., L.P.A. Was at all times relevant the employer of J. Ross Haffey, defense attorney to Billy Slagle on or about February 29, 1988.

16. Defendant Granville Bradley, deceased, was at all times relevant a resident of Cuyahoga County, Ohio and a trial attorney appointed for Billy Slagle's defense in his criminal trial in Cuyahoga County on or about February 29, 1988. Granville Bradley was employed by Forbes Fields & Assoc. at the time of the trial.

17. Defendant Forbes Fields & Assoc., formerly Forbes, Forbes & Assoc., was at all times relevant a legal practice located at 614 Superior Avenue, St. 700, Cleveland, Ohio. Forbes Fields & Assoc. was at all times relevant the employer of Granville Bradley, defense attorney to Billy Slagle on or about February 29, 1988.

## IV.  FACTS

18. On or about February 29, 1988, J. Ross Haffey and Granville Bradley were the trial attorneys appointed for Billy Slagle's criminal defense in said trial.

19. J. Ross Haffey and Granville Bradley were both aware of an offer for plea agreement in Billy Slagle's case of 30 years to life sentence in exchange for a guilty plea to charges of murder.

20. J. Ross Haffey and Granville Bradley were aware that Billy Slagle's case was poor, that he had a high probability of receiving a sentence of death, and that he would accept any plea deal to avoid such.

21. Without consulting Billy Slagle, J. Ross Haffey and Granville Bradley declined this plea offer in Billy Slagle's name.

22. Billy Slagle was subsequently convicted of aggravated murder and sentenced to death.

23. On or about August 4, 2013, Billy Slagle was being held in Chillicothe Correctional Institution's Death Row unit pending execution on August 7, 2013.

24. Billy Slagle had served 25 years awaiting execution for a conviction of aggravated murder received in 1988.

25. At 5:06 AM the morning of August 4th, Billy Slagle was found hanging by a belt in his cell by Officer Putnam, less than one hour from the 72 hour elevated watch status preceding executions, a policy implemented by the Department of Rehabilitation and Corrections and Chillicothe Correctional Institution.

26. On or about August 1st at 4:00 PM, approximately 36 hours before Billy Slagle took his own life, it came to the attention of Prosecutors handling Billy Slagle's case that a plea offer from the Prosecution for a 30 year to life sentence at the time of Billy's trial had *not* been brought to Billy's attention preceding trial.

27. The above mentioned information made it highly probable that Billy Slagle would be granted clemency for his conviction and taken off death row, however no Defendant communicated this information to any Plaintiff.

28. On the night of August 4, 2013, Officer Putnam and Officer McCollister were charged with filling the Death Row block guard posts as relief officers.

29. On the night of August 4, 2013, all six officers filling the Death Row block guard posts were relief officers.

30. Neither the Ohio Department of Rehabilitation and Corrections, the Chillicothe Correctional Institution, nor Warden Norman Robinson enforced an established policy requiring an additional 8 hours training for relief officers prior to filling a guard post in the Death Row block.

31. Neither Officer Putnam nor Officer McCollister received the required 8 hours additional training for relief officers prior to filling a guard post in the Death Row block

on the night of August 4, 2013.

32. On the night of August 4, 2013, both Officer Putnam and Officer McCollister did *not* conduct multiple scheduled patrols of the Death Row blocks or Billy Slagle's cell.

33. On the night of August 4, 2013, Officer McCollister falsified electronic records to conceal the fact that neither he nor Officer Putnam conducted scheduled patrols of the Death Row blocks and Billy Slagle's cell.

34. Prior to August 4, 2013, neither the Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, nor Norman Robinson created or enforced any policy requiring shift supervisors or other personnel in authority positions to verify that officers do in fact conduct scheduled patrols of the Death Row block.

35. On the night of August 4, 2013, either Officer McCollister, Officer Putnam, or both, intentionally caused or negligently allowed for Billy Slagle to come into possession of a belt, knowing that belts are an effective means of committing suicide and that Death Row inmates are at a high risk of committing suicide.

36. On the night of August 4, 2013, either Warden Norman Robinson, the Chillicothe Correctional Institution, the Ohio Department of Rehabilitation and Corrections, or all or any combination of these Defendants, intentionally caused or negligently allowed Billy Slagle to come into possession of a belt, knowing that belts are an effective means of committing suicide and that Death Row inmates are at a high risk of committing suicide.

37. At all times relevant to this matter, neither Norman Robinson, the Ohio Department of Rehabilitation and Corrections, nor the Chillicothe Correctional Institution created or enforced any policy or regulation for the prevention of Death Row inmates coming into possession of belts, knowing that belts are an effective means of committing suicide

and that Death Row inmates are at a high risk of committing suicide.

38. Prior to August 4, 2013, neither the Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, nor Norman Robinson created or enforced any policy requiring shift supervisors or other personnel in authority positions to verify that officers do in fact conduct scheduled patrols of the Death Row block.

39. According to Ohio Department of Rehabilitation and Corrections policy on August 4th, 2013, Billy Slagle should have been placed in a "30 day watch" cell at 30 days prior to execution, and a "72 hour watch" cell 72 hours prior to execution.

40. On August 4, 2013, neither the "30 day watch" cell nor the "72 hour watch" cell at Chillicothe Correctional Institution were safe environments for the prevention of suicide or self harm.

41. The "30 day watch" and "72 hour watch" policies of the Ohio Department of Rehabilitation and Corrections in force on August 4, 2013 were predicated on arbitrary calendar dates preceding an execution and not according to the particular mental, emotional or psychological needs of Billy Slagle as assessed by a qualified professional in these fields.

42. The risk of inmate suicide on Death Row, particularly in close proximity to a prisoner's pending execution, is very well known to Defendants. The risks of not intervening or preventing suicide are well known to Defendants and obvious. At all times relevant to this case Defendants, despite the known risk of suicide among the Chillicothe Correctional Institution's Death Row prisoners, negligently, recklessly, knowingly, intentionally and with deliberate indifference failed to supervise and train staff and failed to implement policies, practices, customs, and usages that adequately addressed the known health and safety risks to Death Row inmates at risk of suicide.

43. Defendants have established policies at the jail that were the moving force behind the suicide of Billy Slagle.

44. Acting pursuant to policy, the defendants in this case have been deliberately indifferent to the risk of suicide posed by Billy Slagle and they have been deliberately indifferent to his need for close supervision and suicide prevention measures.

45. At all times relevant to this action, defendants have acted negligently, recklessly, maliciously and with deliberate indifference to the rights, health and safety of Billy Slagle.

46. As a result of the defendants' actions described above, Billy Slagle suffered pain and emotional distress for the period before his death and suffered injuries resulting in death.

47. As a result of the defendants' action described above, Plaintiff and next of kin have paid funeral expenses, suffered loss of Billy Slagle's support, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education and suffered the loss of prospective inheritance through him.

## V. CAUSES OF ACTION

### FIRST CLAIM - 42 USC § 1983
### All Defendants

48. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

49. Defendants have, under color of state law, deprived Plaintiffs of rights, privileges and immunities secured by the Fourteenth, Eighth and Sixth Amendments to the U.S. Constitution including but not limited to the right to equal protection, due process, to be free from cruel and unusual punishment, and the right to effective assistance of

counsel.

### SECOND CLAIM – 42 USC § 1985
### All Defendants

50. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

51. Either all or some Defendants have conspired together to deprive the Plaintiffs of rights, privileges and immunities secured by the Fourteenth Eighth and Sixth Amendments to the U.S. Constitution including but not limited to the right to equal protection, due process, to be free from cruel and unusual punishment, and the right to effective assistance of counsel.

### THIRD CLAIM – 42 USC § 1986
### All Defendants

52. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

53. Either all or some Defendants knew, or should have known, of a conspiracy to deprive the Plaintiffs of rights, privileges and immunities secured by the Fourteenth Eighth and Sixth Amendments to the U.S. Constitution, and having the power to prevent such conspiracy from coming to fruition, neglected or refused to prevent such conspiracy.

### FOURTH CLAIM – WRONGFUL DEATH
### All Defendants

54. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

55. Defendants' actions proximately caused the death of Billy Slagle resulting in damages recoverable by his Estate under R.C. § 2125.02.

### FIFTH CLAIM – SURVIVAL ACTION
### All Defendants

56. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual

allegations with the same force and effect as if herein set forth.

57. Defendants' actions proximately caused the death of Billy Slagle resulting in damages recoverable by his Siblings and Mother, separately and individually, under R.C. § 2125.02.

### SIXTH CLAIM – INTENTIONAL TORT
**Norman Robinson, Clay Putnam, John McCollister**

58. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

59. Defendants, with the intent to inflict egregious physical, mental, and emotional harm on Plaintiffs and knowing such harm was substantially certain to occur, either placed or caused to be placed in Bill Slagle's possession a nylon belt.

60. Defendants knew that nylon belts are particularly effective for committing suicide, and intended that such a result would occur.

61. Defendants knew that Death Row inmates such as Billy Slagle are particularly prone to committing suicide, and intended that such a result would occur.

62. Billy Slagle did in fact use the nylon belt to commit suicide.

63. Defendant's actions proximately caused Billy Slagle's death, as well as intense mental and emotional anguish for all Plaintiffs.

### SEVENTH CLAIM – INTENTIONAL TORT
**J. Ross Haffey, Granville Bradley,
Bernard & Haffey Co. L.P.A., Forbes Fields & Assoc.**

64. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

65. Defendants, with the intent to inflict egregious physical, mental, and emotional harm on Plaintiffs and knowing such harm was substantially certain to occur, willfully chose not to inform Billy Slagle nor any other Plaintiff of the existence of an offer of plea

agreement in his criminal case.

66. Defendants knew that Billy Slagle was highly likely to receive a guilty verdict and death sentence in his criminal case, resulting in loss of life and prolonged imprisonment, if he did not accept a plea agreement in his case.

67. Billy Slagle did in fact receive a verdict of guilty and a sentence of death in his criminal case.

68. Defendant's actions proximately caused Billy Slagle's death, as well as intense mental and emotional anguish for all Plaintiffs.

**EIGHTH CLAIM – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Norman Robinson, Clay Putnam, John McCollister**

69. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

70. Defendants, with intent that Billy Slagle would seriously consider and contemplate suicide, with the intent to inflict egregious physical, mental, and emotional harm on Plaintiffs, and knowing such harm was substantially certain to occur, either placed or caused to be placed in Billy Slagle's possession a nylon belt.

71. Such behavior is outrageous in nature, and offends the sensibilities of the reasonable observer.

72. Defendants' outrageous behavior did in fact cause Billy Slagle to seriously consider and contemplate suicide, as well as to actually commit suicide.

73. Defendants' outrageous behavior proximately caused the Plaintiffs to suffer severe mental and emotional anguish.

**NINTH CLAIM – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, Norman Robinson, Clay Putnam, John McCollister**

74. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual

allegations with the same force and effect as if herein set forth.

75. Defendants had a duty of reasonable care under the circumstances to avoid from causing physical peril and mental and emotional harm to persons such as Billy Slagle.

76. Defendants breached this duty when they either intentionally caused or negligently allowed Billy Slagle to come in possession of a nylon belt.

77. Defendants knew, or should have known, that nylon belts are particularly effective for committing suicide and that Death Row inmates such as Billy Slagle are prone to committing suicide.

78. Defendants' conduct caused Billy Slagle to be in a state of appreciated physical peril for the duration of time where he contemplated using the nylon belt to commit suicide.

79. As a result of Defendants' negligent conduct, Plaintiffs suffered severe mental and emotional anguish.

**TENTH CLAIM – RECKLESSNESS**
**All Defendants**

80. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

81. Defendants knew that their conduct created a high probability of great bodily harm to Billy Slagle.

82. Defendants willfully and wantonly disregarded such high risk of harm to Billy Slagle.

83. Defendants' recklessness proximately caused the physical, mental and emotional injuries, including death, of Billy Slagle.

**ELEVENTH CLAIM – NEGLIGENCE**
**All Defendants**

84. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

85. Defendants had a duty to take reasonable care under the circumstances not to cause

harm to persons such as the Plaintiffs.

86. Defendants Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, and Norman Robinson breached this duty by failing to enact or enforce customs or policies sufficient for the prevention of suicide amongst Death Row inmates such as Billy Slagle.

87. Defendants Norman Robinson, Clay Putnam, and John McCollister breached this duty when they intentionally caused or negligently allowed for Billy Slagle to come into possession of a nylon belt.

88. Defendants J. Ross Haffey, Glenville Bradley, Bernard & Haffey Co. L.P.A., and Forbes Fields & Assoc. breached this duty when they declined a plea offer made to Billy Slagle without the consent of Billy Slagle.

89. As a direct and proximate result of the Defendants' conduct, Billy Slagle suffered sever physical, mental and emotional injuries including death.

### TWELFTH CLAIM – LEGAL MALPRACTICE
### J. Ross Haffey, Granville Bradley,
### Bernard & Haffey Co. L.P.A., Forbes Fields & Assoc.

90. Plaintiffs reassert, re-allege, and incorporate by reference the foregoing factual allegations with the same force and effect as if herein set forth.

91. Defendants entered into an attorney-client relationship with Billy Slagle which gave rise to all the duties which such a relationship entails.

92. Defendants breached their duty when they failed to inform Billy Slagle of a favorable offer for plea agreement in his criminal case.

93. Defendants' breach proximately caused Billy Slagle to receive a verdict of guilty and a sentence of death, and subsequent death by suicide.

## VI.  PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court:

1. Award Plaintiff compensatory damages in an amount to be shown at trial;

2. Award punitive damages against the individual Defendants in an amount to be shown at trial;

3. Award Plaintiff reasonable attorney's fees, costs and disbursements, and any other relief which is due in accordance with 42 U.S.C. §1988;

4. Grant to the Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

*/s/ John Brooks Cameron*
JOHN BROOKS CAMERON (0055800)
CHRISTOPHER JANKOWSKI (0084129)
John Brooks Cameron & Associates
247 East Smith Rd.
Medina, OH 44256
P: 330-722-8989
F: 330-722-5877
attorney@johnbrookscameron.com

*/s/ Carly Snavely*
CARLY SNAVELY (0081569)
16740 Park Circle Dr.
Chagrin Falls, OH 44023
P: 216-269-9676
F: 440-591-5394

*Attorneys for Plaintiffs*

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

*/s/ John Brooks Cameron*
John Brooks Cameron