IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA CRAFT, et al., | ) | CASE NO.: 1:14 CV 1682 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| OHIO DEPARTMENT OF | ) | |
| REHABILITATION, et al., | ) | |
| | ) | |
| Defendants, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendants' Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, Norman Robinson, Clay Putnam, and John McCollister's Motion to Dismiss. (ECF #24). Plaintiffs filed an Opposition to the motion, and Defendants filed a reply in support of their position. (ECF #28, 32). After careful consideration of the pleadings and a review of all relevant authority, the Motion to Dismiss is GRANTED. This is a partial dismissal of the claims and parties listed in the Complaint and does not terminate the case.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In 1988 Billy Slagle was convicted on capital murder charges and was sentenced to death. (ECF #1 at ¶ 21). Approximately twenty-five years later, three days before his scheduled execution date, Mr. Slagle committed suicide while in the custody at the Chillicothe Correctional Institution's Death Row unit. (ECF #1 at ¶¶ 1, 23). There is an elevated watch policy for death row inmates that kicks in seventy-two hours prior to their scheduled execution. (ECF #1 at ¶ 25). Mr. Slagle was found hanging by belt in his cell less than one hour prior to the implementation of the 72 hour watch policy. (ECF #1 at ¶ 25).

Even prior to the implementation of the 72 hour watch policy, there is a thirty day watch policy, and multiple scheduled patrols for the Death Row blocks. (ECF #1 at ¶¶ 32, 39). Neither officer on duty the night Mr. Slagle committed suicide performed the scheduled patrols, although records were allegedly falsified to show that patrols had been made. (ECF #1 at ¶¶ 32, 33). Further, the belt used by Mr. Slagle to effectuate his suicide was allegedly either intentionally given to Mr. Slagle by defendants, or they negligently allowed him to come into possession of the belt, knowing that it could be a tool for suicide. (ECF #1 at ¶¶ 35, 36, 37).

Mr. Slagle's sister, Lisa Craft, individually and as administrator of the his estate, along with his other sister Casey Lopez, and his mother Patricia Wakefield brought this action against the Ohio Department of Rehabilitation and Corrections; the Chillicothe Correctional Institution; Norman Robinson, the Warden of Chillicothe Correctional Institution (individually and in his official capacity); Clay Putnam, a corrections officer (individually and in his official capacity);

---

[1] Consistent with the standard of review on a Motion to Dismiss, all factual allegations are taken from the complaint and are accepted as true, solely for the purposes of deciding this motion.

John McCollister, a corrections officer (individually and in his official capacity); J. Ross Haffey, a trial attorney for Mr. Slagle during his original trial; Bernard & Haffey, Co., LPA, Mr. Haffey's employer; the Estate of Granville Bradley, the estate of a deceased member of Mr. Slagle's original trial team; and Forbes Fields & Associates, Mr. Bradley's alleged employer. (ECF #1).

Defendants J. Ross Haffey, Bernard & Haffey, Co., LPA, and Forbes Fields & Associates were all later dismissed by Plaintiffs without prejudice. (ECF # 30, 33, 40).

The state defendants, Ohio Department of Rehabilitation and Corrections, the Chillicothe Correctional Institution, Norman Robinson (in his official capacity), Clay Putnam (in his official capacity), and John McCollister (in his official capacity), have moved to dismiss all claims brought against them by the individual Plaintiffs for lack of standing. They also seek to dismiss all claims brought against them under 42 U.S.C. §1983 and under state law based on sovereign immunity, and to dismiss the claims under 42 U.S.C §1985 and §1986 for failure to state a claim upon which relief may be granted. Further, Mr. Robinson, Mr. Putnam, and Mr. McCollister seek to have all state law claims brought against them in their individual capacity dismissed because there has been no immunity determination made by the Ohio Court of Claims.

## STANDARD OF REVIEW

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808 (3rd Cir. 1990).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp 971, 975 (S.D.Ohio 1993).

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 (1980). In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## **ANALYSIS**

I. <u>Section 1983</u>

A claim under 42 U.S.C. § 1983 must allege that a person acting under color of state law has deprived the plaintiff of a right secured by the United States Constitution, or by federal law. *Flagg Bros. V. Brooks*, 436 U.S. 149, 155-157, 56 L. Ed. 2d 185 (1978).

   A. <u>Standing</u>

Plaintiffs, Lisa Croft, individually and as administrator of Mr. Slagle's estate, Casey Lopez, and Patricia Wakefield have all brought claims for a violation of 42 U.S.C. § 1983, based on Mr. Slagle's death. However, "a §1983 claim is 'entirely personal to the direct victim of the alleged

constitutional tort.'" *Barber v. Overton*, 496 F.3d 449, 457 (6th Cir. 2007) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)); see also *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984). Therefore, only the victim or her estate's representative may bring a § 1983. *Jones v. Wittenberg University*, 534 F.2d 1023 (6th Cir. 1976). Family members, however personally affected or aggrieved, may not recover for the violation of their loved ones' civil rights under 42 U.S.C. § 1983.

The individual Plaintiffs argue that they are not suing under § 1983 for the violation of Billy Slagle's civil rights, but rather for the violation of their own right to familial association in violation of their own procedural due process rights under the United States Constitution. The only case cited by the Plaintiffs in which a court has found a violation of the right to familial association involved an alleged violation of a mother's right to take her own baby home from the hospital. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). The other case cited by Plaintiffs, acknowledged a a constitutional right to maintain a familial relationship, but did not find a violation of that right had been alleged in that case. *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1189 (6th Cir. 1985).

In Fact, *Trujillo* supports the Defendants position. In that case, the court found that the claimed misconduct by the state was allegedly aimed at harming the plaintiffs' son/brother, but there was no allegation of any intent by the state to deprive his family members of any constitutional right. Intent to harm the son/brother "may not be transferred to establish intent to deprive his mother and sister of their constitutionally protected rights. The alleged conduct by the State, however improper or unconstitutional with respect to the son, will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right."

*Id.*

There is no question that the Supreme Court has recognized a protected interest in maintaining familial relationships, however, this is an associational right not affected by the facts alleged in the instant case. There is no allegation that the state or any other actor attempted to interfere with the Plaintiffs' status as Mr. Slagle's family members. The fact that Mr. Slagle has been separated from his family by death does not implicate any deprivation of the right of familial association. In this Circuit "no cause of action may lie under § 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook*, 199 F.3d at 357. "Those kinds of injuries are appropriately raised in a state tort law cause of action." *Garrett v. Belmont County Sheriff's Dep't*, 374 Fed. Appx. 612, 615 (6th cir. 2010). The injury alleged by the individual Plaintiffs is the loss caused by a wrongful death, not the loss caused by a failure to legally acknowledge a familial relationship. The injury suffered from a wrongful death may be compensable under certain state laws but not under 42 U.S.C. § 1983. *See, Boggess v. Price*, 2005 Fed. App. 0497N, 2005 U.S. App. LEXIS 11281, *12 (6th Cir. 2005). Therefore, the § 1983 claims asserted by Lisa Craft in her individual capacity, by Casey Lopex, and by Patricia Wakefield are dismissed for lack of standing. Lisa Craft does have standing to pursue a §1983 claim on behalf of Mr. Slagle's estate.

B. <u>Sovereign Immunity</u>

The Supreme Court has held that neither a State, nor its agencies, departments or officials acting in their official capacities are "persons" for purposes of 42 U.S.C. § 1983. *Will v. Michigan Dep. of State Police*, 419 U.S. 58, 71 (1989). Plaintiffs do not contest that Defendants Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, Norman

-6-

Robinson (in his official capacity), Clay Putnam (in his official capacity), and John McCollister (in his official capacity) are immune from suit under 42 U.S.C. § 1983 because they are not "persons" liable that statute. They do contend, however, that Mr. Robinson, Mr. Putnam, and Mr. McCollister are potentially liable under this statute in their individual capacities. Defendants have not provided any law or argument that would counter this assertion. Therefore, the Plaintiffs' § 1983 claims are dismissed as against Defendants Ohio Department of Rehabilitation and Corrections, Chillicothe Correctional Institution, Norman Robinson (in his official capacity), Clay Putnam (in his official capacity), and John McCollister (in his official capacity). The § 1983 claim by Mr. Slagle's estate remains pending against Mr. Robinson, Mr. Putnam, and Mr. McCollister in their individual capacities.

II. Sections 1985 and 1986

"[I]n order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show... that some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993), citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 29 L. Ed. 2d 338, (1971); *accord Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). No such class-based discriminatory animus has been alleged in this case. Plaintiffs attempt to argue that an allegation that there was a conspiracy to deny Mr. Slagle his constitutional rights is sufficient to state a claim under § 1985. In support they cite a 1972 case, *Azar v. Conley*, 456 F.2d 1382, 1385 (6th Cir. 1972), wherein the Court of Appeals found a § 1985 claim had been sufficiently pled by a "white middle class family" without any allegation of racially discriminatory animus. Although it is difficult to find the basis

-7-

for the supposed class in the Court of Appeals description of the *Azar* case, the court specifically recognized the need for some type of allegation of class-based (though not necessarily race-based) discrimination in the assertion of § 1985 claims. Further, even if such an allegation was missing in *Azar*, several more recent U.S. Supreme Court cases and Sixth Circuit cases have re-affirmed this requirement. *See, e.g., United Brotherhood of Carpenters & Joiners of America,* 463 U.S. 825, 77 L. Ed. 2d 1049 (1983); *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

Plaintiffs complaint contains no allegation of any class-based invidiously discriminatory animus by any Defendant in this case. Therefore, Plaintiffs' § 1985 claims are dismissed for failure to state a claim upon which relief may be granted. The parties agree that the claim under § 1986 is a derivative claim to the § 1985 cause of action. Therefore, as the § 1985 claim has been dismissed, the § 1986 claims must be dismissed as well.

III. State Law Claims

The Ohio Department of Rehabilitation and Corrections, and the Chillicothe Correctional Insitution are state entities. The Eleventh Amendment bars any suit in federal court against a state or its departments and agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *Pennhurst State School & Hosp. V. Halderman*, 465 U.S. 89, 100 (1984). The State of Ohio has not waived it Eleventh Amendment immunity from suits for money damages in federal court. *See, Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Ohio has consented to be sued under state law, but only under the exclusive jurisdiction of the Ohio Court of Claims. *See*, 27 O.R.C. §2743.02 ("the state "consents to be sued, and have its liability determining, in the court of claims"). Plaintiffs have not contested the dismissal of their state law claims against the

state agencies on this basis.

In addition, Chapter 9 of the Ohio Revised Code, §9.86 provides that no officer or employee of the State of Ohio "shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wonton or reckless manner." This precludes any liability against state employees Norman Robinson, Clay Putnam, and John McCollister under the state law causes of action, absent a ruling that they acted outside their scope of employment or with "malicious purpose, in bad faith, or in a wonton and reckless manner." This determination can only be made by the Ohio Court of Claims and is not within the jurisdiction of this Court to decide. O.R.C. § 2743.02(F); *See, also, McCorkmick v. Miami University,* 693 F.3d 654, 665 (6th Cir. 2012); *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). "As a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Haynes*, 887 F.2d at 705. There is no evidence that Plaintiffs sought or received any such determination from the Ohio Court of Claims. Therefore, the state law claims against the state employees in their official capacities must be dismissed based on immunity, and in the claims against them in their individual capacities must be dismissed without prejudice for failure to obtain a certification from the Ohio Court of Claims.

**CONCLUSION**

For the reasons set forth above. Defendants' (partial) motion to Dismiss is GRANTED. (ECF #24).  The § 1983 claims against the state agencies and individual defendants in their official capacities are dismissed with prejudice.  The § 1983 claims by the named Plaintiffs in their individual capacities are dismissed as against all defendants for lack of standing.  The § 1983 claim by Lisa Craft in her capacity as executor of Mr. Slagle's Estate, against the individual defendants in their individual capacities remains pending.  The § 1985 and 1986 claims are dismissed with prejudice as against all defendants for failure to state a claim upon which relief can be granted. The state law claims against the individual defendants in their official capacity are dismissed with prejudice.  The state law claims against the state agencies and the individual defendants in their individual capacities are dismissed without prejudice.  The § 1983 claim against Defendant, Estate of Granville Bradley remains pending as to Plaintiff, Lisa Craft as executor to Mr. Slagle's estate only.  All other claims against Defendant, Estate of Granville Bradley remain pending.  A status conference is set for June 9th, 2015 at 10:00 a.m. for all remaining parties.   IT IS SO ORDERED.

   /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:   May 12, 2015